**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. **[4] RAMON MORLA-CABRERA,** *Defendant.* | CRIMINAL NO. 21-002 (DRD) |

**OPINION AND ORDER**

Pending before the Court is Defendant, Ramon Morla-Cabrera's *Appeal to District Court Judge from a Denial of DeNovo Bail Hearing by the Magistrate Judge Under 18 U.S.C. § 3145(B)*. *See* Docket No. 94. On April 29, 2021, a *DeNovo* Bail Hearing was held wherein the Court heard the parties' arguments in favor and against granting bail to Mr. Morla-Cabrera pending trial. After having heard the parties, the Court instructed the Government to submit a supporting brief and defense counsel to then reply. *See* Docket No. 106. Accordingly, a *Brief in Support of the Magistrate Judge's Pretrial Detention Order* and a *Reply to the United States Brief in Support of the Magistrate Judge's Detention Order* were filed by the Government and the Defendant, respectively. *See* Docket Nos. 107 and 108.

For the reasons stated herein, the Court **AFFIRMS** Honorable Magistrate Judge Camille Vélez-Rivé's denial of bail pending trial and accordingly **DENIES** Defendant Ramon Morla-Cabrera's Bail request under the standards of the Bail Reform Act until the verdict. *See* 18 U.S.C. § 3143.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the *Complaint*, on December 29, 2020, the Defendants, including Mr. Morla-Cabrera, were arrested in the Municipality of Peñuelas, Puerto Rico as a result of a Homeland Security Investigation ("HSI") which was initiated back in November 15, 2020 upon the receipt of information regarding a drug

trafficking organization looking for transportation means to introduce 450 kilograms or more of cocaine into Puerto Rico. *See* Docket No. 1, Exhibit 1, ¶ 4-5. At the time of the arrest, Codefendant Felix De Los Santos-Hernández was driving a red Jeep Grand Cherokee SUV in which codefendants, Herlin Hernández-Trinidad, Andres Alexander Hernández De Jesús and Mr. Morla-Cabrera were also present. *See id.*, ¶ 4. During the search incident to the arrest, HSI Special Agents seized $75,020.00 USD in cash from a box located at the trunk of the Jeep SUV believed to be proceeds from illicit drug trafficking activities. *See id.*

Prior to the arrest, during in person meetings between the HSI Undercover ("UC") Officer and the drug trafficking organization, Codefendants, De los Santos-Hernández and Hernández-Trinidad were physically and visually identified by the HSI UC Officer in two prior meetings. *See id.*, ¶ 6. Leading up to the undercover operation, the UC Officer and codefendant Hernández-Trinidad had several conversations as to the circumstances surrounding the exchange for cocaine for $75,000.00. Among the details of those conversations, codefendant Hernández-Trinidad explained that he would bring along to the exchange his brother, codefendant, Hernández-De Jesús Ramon, so he could teach him how the operation works. He also said he would bring an "older individual" to the exchange, "so it would look less suspicious." *Id.*, ¶ 7. "Defendant Morla-Cabrera, who was arrested in the vehicle, is 53 years old, older than the other defendants, and fits the description of the older individual Hernández-Trinidad mentioned to help lessen suspicion." *Id.*

On the day of the arrest, the UC Officer spoke to codefendant Hernández-Trinidad 20 minutes before meeting to confirm and provide an exact meeting location with a picture of the vehicle. Thereafter, the four (4) defendants arrived at the meeting in a single vehicle to the agreed upon location. *See id.* Then they waited in the car for five (5) to ten (10) minutes, before attempting to contact the UC Officer. Thereafter, they sent a text message to the UC officers and accordingly, officers broke surveillance and proceeded to arrest the defendants. *See id.*

Upon his arrest, Mr. Morla-Cabrera agreed to answer questions and make statements. *Id.*, ¶ 10. The Defendant, "freely and voluntarily stated that on December 29, 2020, the day of his arrest, he was

accompanying Herlin Hernandez-Trinidad, the front passenger, to a place in Peñuelas, P.R. to buy fresh fish. Morla-Cabrera and Hernandez-Trinidad have known each other for two years. Morla-Cabrera identified the driver as 'Felix' his cousin." *Id.*, ¶ 13.

Accordingly, on January 8, 2021, a Grand Jury returned a Four-Count Indictment against Defendant, Ramon Morla-Cabrera and nine (9) other codefendants. Particularly, Mr. Morla-Cabrera was charged for conspiracy to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii) (hereinafter, "Count Three"); and attempted possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(ii); and 18 U.S.C. § 2 (hereinafter, "Count Four"). *See* Docket No. 24.

A *Bail Hearing* was held wherein Magistrate Judge Vélez-Rivé heard the parties' arguments in favor and against detention, but ultimately ordered the defendant be detained pending further proceedings. *See* Docket No. 55. In turn, the Defendant filed a *Motion to Reopen Bail Hearing* which was denied by Magistrate Judge Vélez-Rivé by holding that,

> Defendant is now raising two new matters in support of bail, to wit, a TPC [third-party custodian] and an attempt by Defendant to legalize his status in the United States. These two matters are not enough to justify the re-opening of the bail hearing to consider conditions of release. Moreover, they do not warrant a change of the order of detention issued by the undersigned (Docket No. 56) and the grounds in support thereof. Defendant is still considered a risk of flight and a danger to the community. Signed by US Magistrate Judge Camille L. Velez-Rive.

*See* Docket Nos. 87 and 93, respectively.

As a result thereof, the Defendant filed an *Appeal to District Court Judge from a Denial of DeNovo Bail Hearing by the Magistrate Judge Under 18 U.S.C. § 3145(B)* and subsequently requested a hearing on appeal. *See* Docket Nos. 94 and 95, respectively. The Defendant essentially argues that "there is nothing in the discovery that belies Morla's initial statement, that he did not participate[] in the conspiracy. Particularly, discovery has not shown any role in the drug conspiracy [as to the Defendant]. No person has identified Mr.

3

Morla [] as the person involved in the drug conspiracy." Docket No. 94 at 3. Therefore, according to Mr. Morla, the Magistrate Judge failed to consider the weight of the evidence as "she did not provide the defendant, with an opportunity to argue lack of evidence with the new discovery provided." *Id.*

The Defendant argues that he has been working in the United States for the past twenty (20) years (¶ 9); has been living with his American citizen brother in Puerto Rico the entire time and has not moved (¶ 10); Mr. Morla-Cabrera's brother is an United States citizen "who is willing to put up his house [as] guaranty and be a third-party custodian" (¶ 11); and has a pending Immigration case in the Guaynabo Immigration Court which, if he prevails, would afford him a permission to lawfully be a permanent resident of the United States, which in turn, reduces his likelihood of absconding (¶¶ 13, 14).

Whereas, the Government contends that the Court should affirm Honorable Magistrate Vélez-Rivé's pre-trial detention order as "the magistrate judge correctly determined that Morla has not rebutted the strong presumption in favor of detention presented by his charges. Even if rebutted, Morla presents a substantial risk of non-appearance given the severity of the charges against him, his strong ties to the Dominican Republic, the weight of the presumption, and the strength of the government's evidence." Docket No. 107.

## II. THE STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141, et seq. at § 3142(f)(1)(c) and (e), sets forth a "rebuttable presumption" that no condition or combination of conditions will reasonably assure the appearance of the accused as required and the safety of the community if there is probable cause established via an indictment that the person committed an offense for which the term of imprisonment of ten or more years is prescribed under the Controlled Substances Act, 21 U.S.C. § 801. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991); *United States v. O'Brien*, 895 F.2d 810, 814-815 (1st Cir. 1990). In the instant case, the presumption has been triggered as all counts of the *Indictment* wherein defendant is accused of conspiracy to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846,

841(a)(1) and (b)(1)(A)(ii); and attempted possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(ii); and 18 U.S.C. § 2. *See* Docket No. 24.

The presumption has a "significant practical effect". *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985). The presumption does not shift the burden of persuasion to the defendant, because the government retains burden throughout. The defendant, however, once the presumption is triggered, is required to carry the burden of production. *Id.*, 757, F.2d at 380-384.

The "rebuttable" statutory presumption created is that ". . . it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten or more years is prescribed in the Controlled Substances Act, (21 U.S.C. 801 et seq.)" 18 U.S.C. § 3142(e). The presumption created is therefore of both "flight of risk" and "danger" to the community. *Jessup*, 757 F.2d at 381.

Once the presumption is triggered, the defendant is required to produce "conflicting evidence" to undercut the legislative purpose of the presumption. *United States v. Jessup*, 753 F.2d 383. The defendant is required to produce "some evidence" to the contrary. *United States v. O'Brien*, 895 F.2d at 815. However, it is not merely any evidence that destroys the presumption since the "bursting bubble theory" was expressly rejected by then Chief of the First Circuit, now Supreme Court Justice, Steven Bryer, at Jessup, 757 F.2d at 382-383. The "intermediate position" adopted in *Jessup* requires the defendant to produce "conflicting evidence" as to "danger" and "flight" and then the court "determine[s] on which side the evidence preponderates." *Jessup*, 757 F.2d at 383 citing *Wright v. State Accident Insurance Fund*, 289 Or. 323, 613 F.2d 755, 759-60 (1985).

Finally, in making its final determination after receiving the rebuttal pursuant to § 3142(g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including . . . character, physical and mental

5

condition, family history . . . past conduct" and the "danger posed to the community" by his release. *United States v. Jessup, Id.*

Hence, when presenting evidence as to the factors of dangerousness to the community, and risk of flight, the parties are to submit following statutory factors: (a) nature and circumstances of the offense; (b) weight of the evidence; (c) history and characteristics of the accused, as well as the nature and gravity of the danger posed by the defendant's release. *See United States v. Patriarca*, 948 F.2d 789 (1st Cir.1991).

As previously stated, the instant case is governed by the presumption of detention set forth under the Bail Reform Act based on a drug related indictment (Counts Three and Four in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(ii). The Court must, therefore, analyze the statutory factors required under the law. The Court proceeds *in seriatim* fashion to examine the statutory criteria at 18 U.S.C. § 3142(g)(1),(2),(3),(4).

### III. LEGAL ANALYSIS

The Court begins by noting that an order of detention pending trial is proper when no condition or combination of conditions will reasonably assure the appearance of the accused as required and the safety of the community if there is probable cause established via an indictment that the person committed an offense for which the term of imprisonment of ten or more years is prescribed under the Controlled Substances Act, 21 U.S.C. § 801. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991); *United States v. O'Brien*, 895 F.2d 810, 814-815 (1st Cir. 1990). Said presumption does not depend on an evaluation of the strength of the case in chief. Rather, upon showing "probable cause to believe that the person committed" the relevant offense. 18 U.S.C. § 3142(e)(3). However, the First Circuit has consistently held that "[a] grand jury indictment provides probable cause to believe that [Defendant] has committed an offense for which he may receive a sentence of imprisonment for ten or more years for violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*" *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). Therefore, the fact that

Mr. Morla-Cabrera had already been indicted was sufficient to establish probable cause without the Court making an independent finding of probable cause.

As the presumption has been triggered, Mr. Morla-Cabrera is required to produce "conflicting evidence" to undercut the legislative purpose of the presumption. *United States v. Jessup*, 753 F.2d 383. Specifically, Mr. Morla-Cabrera must produce "conflicting evidence" as to "danger to the community" and "risk of flight." *Id.* Thereafter, the Court "must weigh the evidence, giving the presumption the value of evidence, and determine upon which side the evidence preponderates." *Id.*

Mr. Morla Cabrera is charged with two (2) Controlled Substances Act offenses, to wit, Counts Three and Four of the *Indictment* in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii), effectively triggering the presumption of "danger to the community" and "risk of flight." *See* Docket No. 24. As admitted by Mr. Morla Cabrera, "[t]he presumption, therefore, is that the criminal defendant poses a risk both of flight prior to prosecution and a risk of danger to the community." *Jessup*, 757 F.2d at 384. The Defendant fails to raise "conflicting evidence" rebutting the presumption that he poses danger to the community. The Court explains.

### A. *Mr. Morla-Cabrera's contention that he does not pose a "risk of flight" or "danger to the community"*

The Defendant argues that the Magistrate Judge's decision fails to consider that he has been working in the United States for the past twenty (20) years (¶ 9); has been living with his American citizen brother in Puerto Rico the entire time and has not moved (¶ 10); Mr. Morla-Cabrera's brother is an United States citizen "who is willing to put up his house [as] guaranty and be a third-party custodian" (¶ 11); and has a pending Immigration case in the Guaynabo Immigration Court which, if he prevails, would afford him a permission to lawfully be a permanent resident of the United States, which in turn, reduces his likelihood of absconding (¶¶ 13, 14).

Accordingly, Mr. Morla-Cabrera "understands that the fact he is legalizing his status before the Immigration Court in Puerto Rico, is a powerful indicator that he will not abscond." Docket No. 94, ¶ 20. He

further adds that he "is not motivated to flee the jurisdiction" as he "has an opportunity to become a Permanent Resident of the USA, after all these years." *Id.* Therefore, the Defendant alleges that he does not pose a "risk of flight."

As to the fact that he is considered a "danger to the community" as he was charged with violations to the Controlled Substances Act, the Defendant argues that he "is a first-time offender, with no history of violence, and the evidence provided so far to the magistrate or deciding the Motion without a hearing does not point to any evidence that will make him a danger to the community, a serious risk that he will obstruct justice or intimidate a prospective witness or juror." *Id.*, ¶ 21.

The Court notes that Mr. Morla-Cabrera's argument that he does not pose a risk of flight is grounded upon the fact that although he is an illegal alien in the United States, he has a pending proceeding in the Immigration Court where he has an opportunity to legalize his status in the United States, hence, will stay in Puerto Rico. The problem with this contention is that it is "conclusory" in nature and therefore, "essentially useless in rebutting the presumption." *United States v. Gomez-Santiago*, 1 F.3d 1231, 2 (1st Cir. 1993). As correctly raised by the Government, the Defendant "essentially asks [the] Court to take his word that he would rather stay here, fight the serious charges against him, and then continue the uphill battle of legalizing his status, rather than flee the jurisdiction." Docket No. 107. After all, the seriousness of the instant offense is such that it carries a potential term of imprisonment of at least ten (10) years with a maximum term of life imprisonment. 21 U.S.C. § 841(b)(1)(A). Courts have found that charges with exposition of long terms of imprisonment create a significant incentive for a Defendant to flee. *See United States v. Hussain*, 6 F. App'x 50, 52 (1st Cir. 2001)(holding that "given the seriousness of the charges and the 10–year mandatory minimum sentence that appellant would face if convicted, the strength of appellant's commercial and family ties to Pakistan would appear to reinforce his incentive to flee.") Therefore, the Court finds the Defendant's argument regarding his migratory status insufficient to rebate a presumption of "risk of flight."

8

As to presumption of "danger to the community" he is facing charges for violations to the Controlled Substances Act, which are very serious offenses which carry terms of imprisonment from ten (10) years to life in prison. The Defendant has failed to raise "conflicting evidence" which would in turn demonstrate that he is not a danger to the community. Alleging that this is his first offense who has no history of violence will not suffice.

**B.     *Mr. Morla-Cabrera poses a significant risk of non-appearance by preponderance of the evidence***

In the alternative, "the presumption does not disappear, but rather retains evidentiary weight—the amount depending on how closely defendant's case resembles the congressional paradigm." *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987)(citing *Jessup*, 757 F.2d at 387). Therefore, the Court "must weigh the evidence, giving the presumption the value of evidence, and determine upon which side the evidence preponderates." *Id.*, at 383 (quoting *Wright v. State Accident Insurance Fund*, 289 Ore. 323, 613 P.2d 755, 759-60 (1985)). The following statutory factors are to be considered: (a) nature and circumstances of the offense; (b) weight of the evidence; (c) history and characteristics of the accused, as well as the nature and gravity of the danger posed by the defendant's release. *See United States v. Patriarca*, 948 F.2d 789 (1st Cir.1991).

The Pretrial Services Report details Mr. Morla-Cabrera's strong ties with the Dominican Republic, to wit, he was born in the Dominican Republic on August 12, 1967; his mother lives in the Dominican Republic; and has thirteen (13) siblings, and only two (2) of them are United States citizens, making it highly probable that 11 siblings live in the Dominican Republic. *See* Docket No. 34 at 1. Although the Defendant claimed that he did not have children, his brother, Pedro Cabrera informed that Mr. Morla-Cabrera has three (3) children in the Dominican Republic. *See id.* Therefore, no set of conditions are present that could assure Mr. Morla-Cabrera's appearance at trial.

Moreover, as previously discussed, Mr. Morla-Cabrera is charged with major drug offenses, which is precisely the type of conduct that Congress targeted when establishing a presumption in favor of detention. Particularly, "Congress concluded that 'flight to avoid prosecution is particularly high among persons charged with major drug offenses.'" *Jessup*, 754 F.2d at 384 (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 19, at 20 (1983)). To wit, Mr. Morla-Cabrera and the other defendants were on their way to pick up 300 kilograms of cocaine, approximately worth nine million dollars ($9,000,000.00). Therefore, "[t]he crime with which [the Defendant] is charged indicate[s] that [he is] part of a large trafficking conspiracy which sought to deliver several million dollars' worth of cocaine into the [] United States. Thus, [the Defendant is] among those at whom the statutory presumption is specifically aimed." *United States v. Travieso-Ocasio*, 7 F.3d 219, 1993 WL 405705, at 3 (1st Cir. 1993). Therefore, the Court deems that Mr. Morla-Cabrera fits the mold of a defendant who could potentially avoid prosecution of such major charges by returning to the Dominican Republic.

### C. *Mr. Morla-Cabrera's claim that his mere presence at the time of the arrest provides sufficient basis to grant bail*

During the *DeNovo Hearing*, the Defendant argued that he was not part of the drug trafficking operation but rather was going to the Municipality of Peñuelas to buy fish. In support thereof, the Defendant made reference to the voluntary interview he provided to the HSI Officers, wherein he stated that "on December 29, 2020, the day of his arrest, he was accompanying Herlin Hernandez-Trinidad, the front passenger, to a place in Peñuelas, P.R. to buy fresh fish." Docket No. 1, Exhibit 1, ¶ 13.

In fact, in the *Reply,* the Defendant argues that [t]he place where the Agents arrested [him] is a dead-end street right in front of a restaurant where Mr. Morla was going to have lunch." Docket No. 108 at 2. However, there is nothing on the record that proves this contention other than the information the Defendant has provided to counsel. Additionally, although the Defendant argues that Mr. Hernández-Trinidad "totally cleared [him] from criminal participation," no evidence was provided in support of the allegation. *Id.* As Mr.

Morla-Cabrera has insisted since his arrest that his presence during the operation was solely related to buying fish, he argues that the weight of the evidence is low, and therefore, bail is warranted.

Whereas, the Government argues that "Hernandez indicated that he would bring an 'older individual.' Morla fits the description of the older individual, as he is significantly older than the other three individuals that arrived in the SUV. Inside the SUV were the $75,000 that the undercover agent and Hernandez had agreed to exchange for cocaine." Docket No. 107 at 9.

The Defendant's contention that he was solely going to buy fish in Peñuelas, which in turn warrants bail, has been rejected by the First Circuit under similar circumstances. To wit, a DEA Agent observed suspicious behavior from several individuals, including a person who has been previously observed at a known drug point, which led him to believe they were involved in drug activity. Accordingly, after observing the individual for several minutes, he intervened, along with another agent and detained the suspects. Inside the vehicles, the agents found fourteen suitcases containing a total of 225 kilograms of cocaine, along with other contraband material. The First Circuit ultimately found that the order of detention without bail pending trial was warranted by finding that,

> "[f]irst, the evidence against each appellant is strong. All were observed by a DEA Agent participating, in broad daylight, in a major drug transaction. Several of the appellants claim that the evidence shows only their presence at the scene of a crime and association with a principal, neither of which is sufficient for proving aiding and abetting. *United States v. Alvarez*, 987 F.2d 77, 83 (1st Cir. 1993). However, as this court has said, 'criminals rarely welcome innocent persons as witnesses to serious crimes.' *United States v. Hernandez*, 995 F.2d 307 (1st Cir. 1993), *petition for cert. filed* (Sept. 7, 1993) (quoting *United States v. Ortiz*, 966 F.2d 707, 712 (1st Cir. 1992), *cert. denied* 113 S.Ct 1005 (1993))."

*Travieso Ocasio*, 7 F.3d at *2 (1st Cir. 1993). Most critical, the description provided by the agent as to the way the SUV approached the meeting location contradicts Mr. Morla-Cabrera's contention. It is significant to point out that "[w]hen the four defendants arrived at the pre-determined meeting place in a single vehicle, they drove the length of the parking lot, and returned to the exact meeting location. They then waited in the car for between five and ten minutes before attempting to make contact with the UC Officer. The four

individuals remained in the vehicle waiting until they sent the UC Officer a text message and officers broke surveillance and arrested the defendants." Docket No. 1, Exhibit 1, ¶ 8. It is precisely the suspicious conduct of the defendants, what makes it particularly difficult to determine that Mr. Morla-Cabrera did not know that he was on the vehicle as part of a drug trafficking operation.

But ultimately, an indictment was returned by a grand jury which means probable cause has been found that Mr. Morla-Cabrera has committed the charged offenses. Said finding is sufficient to establish the weight of the evidence for the instant case to move forward with an order of detention without bail pending trial.

### III. CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES** Defendant Ramon Morla-Cabrera's bail request under the standards of the Bail Reform Act until the verdict. *See* 18 U.S.C. § 3143. Therefore, the Order of Detention Pending Trial issued by U.S. Magistrate Judge Camille Vélez-Rivé on January 21, 2021 (Docket No. [56]) is hereby **AFFIRMED.**

Defendant Morla-Cabrera shall remain detained without bail pending trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of June, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge